UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACIE CUMBUS,
o.b.o. K.D.W., a Minor,

                    Plaintiff,         Case No. 19-cv-12540
                                        Honorable Mark A. Goldsmith
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 19, 23)**

       Tracie Cumbus ("Cumbus") brings this action on behalf of her minor daughter, K.D.W. ("Plaintiff"),[1] pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties filed summary judgment motions (ECF Nos. 19, 23), which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

       For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 23)** be **DENIED**, Cumbus' Motion for Summary Judgment **(ECF**

---

[1] For convenience, the Court will refer to K.D.W., the minor child, as "Plaintiff," although her mother, Tracie Cumbus, is the named plaintiff in this action.

**No. 19)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.  REPORT

### A. Background

On October 22, 2015, Cumbus filed an application for SSI benefits on Plaintiff's behalf, alleging a disability onset date of September 1, 2013.  (Tr. 304).  On February 29, 2016, the Social Security Administration denied this application.  (Tr. 246).  After Plaintiff filed a timely request for an administrative hearing, ALJ Martha M. Gasparovich held a hearing on November 6, 2017.  (Tr. 214-35).  Tracie Cumbus appeared and testified at the hearing.  (*Id.*).  On June 1, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled under the Act.  (Tr. 100-118).  On July 2, 2019, the Appeals Council denied review.  (Tr. 3-5).  Cumbus timely filed for judicial review of the final decision on August 19, 2019.  (ECF No. 1.)

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical and school records, function and disability reports, and testimony as to Plaintiffs' conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

1382c(a)(3)(C)(i).  The Social Security regulations set forth a sequential three-step process for determining a child's disability claims:  first, the child must not be engaged in "substantial gainful activity," second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.  Paragraph A of the listings is a composite of medical findings that are used to substantiate the existence of a disorder, whereas the purpose of the paragraph B criteria is to describe impairment related functional limitations that are applicable to children.  *See id*.  Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing.  *See Elam ex rel. Golay v. Comm'r of Soc. Sec*., 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment.  *See* 20 C.F.R. § 416.926a.  "Medical equivalency is covered by 20 C.F.R. § 416.926; functional equivalency is covered by Section 416.926a."  *Vansickle v. Comm'r of Soc. Sec*., 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment."  *Walls v. Comm'r of Soc. Sec*., No. 1:08CV254, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. § 416.926(a)).  A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular

3

> listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, No. 11-11862, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. § 416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing, or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, No. 04-03386 SC, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six. *See* 20 C.F.R. § 416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation results if the

4

child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i).

### C. The ALJ's Application of the Child Disability Standards

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 23, 2015, the application date. (Tr. 106). At Step Two, the ALJ found that Plaintiff had the severe impairments of mixed receptive/expressive language impairment; specific learning disorder, reading and math; and attention deficit hyperactivity disorder. (*Id*.). At Step Three, the ALJ concluded that these impairments did not meet or medically equal a listed impairment. (*Id*.). The ALJ also found that Plaintiff's impairments did not functionally equal any Listing because she had a marked limitation in the functional domain of acquiring and using information, a less than marked limitation in attending and completing tasks, a less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in caring for herself, and no limitation in health and physical well-being. (Tr. 107-117). Accordingly, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 117).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec*., 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec*., 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or

deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case de novo, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 51213; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**E. Analysis**

Plaintiff mounts three challenges to the ALJ's finding that she is not disabled under the Act: (1) the ALJ erred in at step two by failing to find her anxiety severe; (2) the ALJ's step three

finding is not supported by substantial evidence; and (3) the AJL failed to develop the administrative record by neglecting to question Plaintiff and to request additional teacher questionnaires. Because the Court finds that Plaintiffs' step three argument is meritorious and concerns the most fundamental issue in this case – Plaintiff's ability to acquire and use information – the Court will focus its discussion on that issue.

In her decision, the ALJ recognized that at step three she must determine whether Plaintiff "has an impairment or combination of impairments that meets or medically equals the severity of a listing, *or that functionally equals the listings*." (Tr. 104) (emphasis added). She also recognized that "[i]n determining whether an impairment or combination of impairments functionally equals the listings, [she] must assess [Plaintiff's] functioning in terms of [the] six domains" identified above, including "acquiring and using information . . ." (*Id.*) The ALJ noted that she "must compare how appropriately, effectively and independently the [Plaintiff] performs activities compared to the performance of other children of the same age who do not have impairments." (*Id.*) The ALJ noted that "[t]o functionally equal the listings, the [Plaintiff's] impairment or combination of impairments must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." (*Id.*) (citing 20 C.F.R. § 416.926a(d)). The ALJ also noted that "a child has an 'extreme' limitation in a domain when her impairment(s) interferes 'very seriously' with her ability to independently initiate, sustain, or complete activities." (*Id.*) (citing 20 C.F.R. § 416.926a(e)(3).

Before addressing Plaintiff's limitation in acquiring and using information, the ALJ explained the following regarding that domain:

> Acquiring and using information concerns how well a child is able to acquire or learn information, and how well a child uses the information she has learned. This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities

> at home, at school, and in the community. Social Security Rules that a school-age child [] without an impairment should be able to learn to read, write, and do math, and discuss history and science. The child will need to use these skills in academic situations to demonstrate what she has learned by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. . . . The child should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others [].

(Tr. 112).

The ALJ then noted a number of "examples of difficulty children could have in acquiring and using information," including "has difficulty comprehending written or oral directions"; "struggles with following simple instructions"; "has difficulty solving mathematics questions or computing arithmetic answers"; and "talks only in short, simple sentences, and has difficulty explaining what she means." (*Id.*)

In finding that Plaintiff had only a "marked" limitation in the domain of acquiring and using information, the ALJ significantly understated and mischaracterized the record in multiple respects, and failed to meaningfully discuss and analyze evidence which, upon a thorough and fair evaluation, could easily support a finding that Plaintiff actually has an "extreme" limitation in that domain.

In discussing her reasons for finding Plaintiff had only a "marked" limitation in acquiring and using information, the ALJ wrote:

> The record, as discussed above, indicates the [Plaintiff] has struggled in reading and math []. She was noted to exhibit impairment in receptive and expressive language impairment, which interfered with her ability to comprehend grade-level curriculum, complex directions, and paragraphs or stories read to her. By June 2015 . . . the [Plaintiff's] verbal skills had notably improved . . . Ms. Cumbus testified that the [Plaintiff] is in special education

8

>for reading only. . . . As discussed in more detail above, ***school records have consistently noted improvement in her academic performance***.

(Tr. 112-13) (emphasis added).

This central aspect of the ALJ's analysis is not supported by substantial evidence. The Court will below provide a detailed discussion of the salient record evidence, but it highlights a few points at the outset. First, although it is true that Ms. Cumbus testified Plaintiff was receiving special education for reading only, the record makes clear that Cumbus was either misinformed or misspoke. In fact, Plaintiff was consistently receiving special education services in both reading and math, and school records showed that she had learning disabilities in reading comprehension, listening comprehension, oral expression, mathematics calculation, and mathematics problem solving, and was receiving special assistance in all of those areas. Second, far from merely "struggling" in reading and math, Plaintiff's most recent standardized tests in both subjects placed her in the *first percentile* of all students. In light of that (and the other evidence discussed below), the ALJ's assertion that "school records have consistently noted improvement in her academic performance" is not supported by substantial evidence. Indeed, in many respects, the opposite appears to be true. Third, Plaintiffs' challenges didn't merely interfere with her ability to perform "grade-level" curriculum, but placed her skills between the first and second grades *when she was in the sixth grade*. Finally, Plaintiff's challenges went beyond interfering wither her ability to comprehend "complex" directions. Rather, the evidence shows that Plaintiff struggled to respond appropriately (or sometimes at all) even in response to simple questions and "one-step directions."

The record indicates that Plaintiff first qualified for an Individualized Education Plan ("IEP") on June 2, 2015 to receive special education services due to a "Specific Learning Disability." (Tr. 200). The qualifying criteria included low scores in basic reading skills, reading comprehension, mathematics calculation, mathematics problem solving, written expression,

9

listening comprehension and oral expression. (*Id*.). Speech Language Pathologist Lyndsie Kerr administered a Clinical Evaluation of Language Fundamentals – Fifth Edition (CELF-5) to Plaintiff for this IEP. (Tr. 406-08). That CELF-5 revealed that Plaintiff was below average in core language, receptive language, expressive language, language content and language structure. (*Id*.). In addition, School Psychologist Makane Forch assessed Plaintiff, including administering the Wechsler Intelligence Scale for Children – Fifth Edition. (Tr. 409). This assessment revealed a full scale IQ of 75, which is borderline. (Tr. 412).

On November 17, 2015, Special Education Provider Lisa Fenberg completed a teacher questionnaire at the request of Social Security. (Tr. 333-34). Fenberg noted that Plaintiff was currently receiving special education services. (Tr. 333). Fenberg also noted that Plaintiff's reading level was at the first percentile rank, her math level was at the fourth percentile rank, and her writing level was at the fifth percentile rank. (*Id*.). Fenberg stated that Plaintiff had specific learning disabilities in reading, writing, math, oral expression and listening comprehension. (*Id*.). She stated that Plaintiff received special education instruction in a resource room 7-11 hours a week and forty-five minutes a week of speech therapy. (*Id*.).

Plaintiff had another IEP Team Meeting on April 26, 2016. (Tr. 184). The report of that meeting indicated that Plaintiff was "very kind and cooperative" and "is a good friend." (*Id.*) While the report indicated that Plaintiff "is good about working independently when she understands the expectations," she nevertheless still qualified for an updated IEP. (*Id.*; Tr. 167). The report went on to explain how Plaintiff's various challenges are inter-related and impact her ability to acquire and use information in school. For example, the report indicates that Plaintiff "continues to struggle with solving 1 step word problems involving 2 digit numbers . . . [Plaintiff] continues to struggle with knowing her basic facts as well. When asked what 11-3 is, she gave me

a blank stare. . . . [Plaintiff's] difficulties in math make it difficult for her to be successful in the general education curriculum, complete classwork, and complete assignments in a large group setting." (Tr. 185). The report then turned to Plaintiff's reading challenges, noting, "[Plaintiff] is a word by word reader . . . [She] is not secure in the strategy of trying the sound before trying the name of the letter. . . .[She] often makes errors relating to vowel sounds and vowel combinations . . .[Plaintiff's] difficulties in reading make it difficult for her to be successful in the general education curriculum. She has difficulty reading directions and content on assignments." (*Id.*) Thus, Plaintiff was designated for special education services in both math and reading. (*Id.*)[2]

At Plaintiff's March 27, 2017 IEP meeting, when Plaintiff was in the fifth grade, it was reported that Plaintiff was reading at a level K – second grade – and that "her reading comprehension was low." (Tr. 582). The report notes that Plaintiff continued to have specific learning disabilities in reading comprehension, listening comprehension, oral expression, mathematics calculation, and mathematics problem solving. (Tr. 583).

The record also includes Plaintiff's NWEA test scores from fall 2017. (Tr. 599). They reflect that she scored in the first percentile in all three categories tested – math, reading, and language usage. (*Id.*) According to charts Cumbus discusses in her brief (the accuracy of which the Commissioner does not challenge), Plaintiff's math and reading scores indicate she was

---

[2] Although the report indicates that Plaintiff "has shown great improvements in her reading comprehension," just three sentences later, it indicates that "[w]hen asked to retell about a story she has read she often pauses for a long time (ex. almost 30-60 sec) and has difficulty generating a response. [She] has difficulty answering open ended questions such as 'Tell me about the story.'" (Tr. 185). As a result, the report indicated that Plaintiff "requires specialized instruction and supplementary aids to meet her reading needs." (*Id.*) The report indicated she needed the same specialized instruction and supplementary aids to address her "writing needs," and that she would benefit by more speech and language services to improve her receptive and expressive language skills. (Tr. 186). The ALJ failed to discuss these details which put the remark about Plaintiffs' "improvements" in context, and highlight that it is a relative term carrying little meaning on its own.

11

performing between the first and second grades, when in reality she was in the sixth grade. (ECF No. 19, PageID.700-02).

On November 27, 2017, at ALJ Gasparovich's request, Middle School Social Worker Jill Guanco submitted a teacher questionnaire for the ALJ's consideration. (Tr. 382-83). Guanco again noted that Plaintiff received special education services. (Tr. 382). She also noted that Plaintiff had specific learning disabilities in basic reading, math calculation, math problem solving, reading comprehension, listening comprehension, written expression and oral expression. (*Id*.). She indicated that Plaintiff received resource room instruction and speech therapy. (*Id*.). Perhaps most significantly, in the additional comments section, Guanco wrote:

> [Plaintiff] has **extreme difficulty comprehending and performing** in the general education environment. She requires all assignments and assessments to be modified. She **struggles to follow one-step directions** at times. [Plaintiff] is in resource room classes for language arts (2 hours) and math (1 hour).

(Tr. 383).

Plaintiff had another IEP Team Meeting on March 23, 2018. (Tr. 145). She was receiving F grades in reading, science, and band, a C grade in "resource room math," and a C-minus in theater. (Tr. 146). Her January 2018 "scholastic reading inventory" score was "below basic." (*Id.*) Although this particular report lists Plaintiff's primary disability as "speech and language impairment," importantly, the report states, "[Plaintiff] **did not achieve her goals**. [Plaintiff] is still working toward mastery of her goals in basic reading, reading comprehension, written expression, math problem solving and calculation, listening comprehension, and oral expression." (*Id.*) (emphasis added). In a February 2018 test, Plaintiff was "unable to decode any multisyllabic words given." (*Id.*) The report went on to state, "[Plaintiff's] weaknesses in her basic reading skills cause her to struggle on grade level texts in all content areas." (*Id.*) Similarly, the report

12

referenced "a notable change in [Plaintiff's] comprehension skills" for the worse (albeit on a short-term comparison), and that the "weaknesses in her reading comprehension cause her to struggle on grade level texts in all content areas." (Tr. 147-48). The report makes a similar statement about Plaintiff's weaknesses in her written expression. (Tr. 148). The report also documents that Plaintiff remained in the resource math room and that she "has a hard time grasping basic math concepts," "has weak foundations in math," "has not yet mastered basic math facts," and "was not able to meet [the] goal" of solving addition and subtraction word problems with a calculator. (Tr. 148-49). Finally, as to language, the report indicated that Plaintiff "is struggling with comprehension and formulating sentences" and that this was "adversely affecting her in the classroom . . ." (Tr. 149-50). Thus, continued specialized instruction was recommended in all of the areas mentioned herein. (Tr. 146-150).

Based on all of the foregoing evidence, virtually none of which was discussed by the ALJ in any detail, the Court cannot say that substantial evidence supports the ALJ's finding that Plaintiff suffers only a "marked" limitation in the domain of acquiring and using information. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'") (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record."). The ALJ's overall assessment that Plaintiff's "school records have consistently noted improvement in her academic performance" is simply inaccurate. The evidence suggests that Plaintiff's academic performance regressed (from an already extremely low level), with the

13

most recent records showing she had not achieved her goals of acquiring even basic reading and math skills. The records explained how this demonstrated weakness severely impacts her ability to acquire and use information. She consistently demonstrated "difficulty comprehending written or oral directions," "struggles with following simple instructions," "difficulty solving mathematics questions or computing arithmetic answers," and an inability to answer questions in anything other than "short, simple sentences," all hallmarks of a child with an extreme limitation in the salient domain. All of this is consistent with the fact Plaintiff's most recent test scores show her performing at the first percentile in all categories. Finally, Ms. Guanco specifically found that Plaintiff suffers an "extreme" limitation in "comprehending and performing" in school, and the ALJ never explained why that finding, consistent as it is with the other evidence discussed herein, does not support an extreme limitation in acquiring and using information.[3]

In sum, a thorough and even weighing of the competing evidence by the ALJ is required to determine whether Plaintiff functionally equaled a relevant listing and is disabled under the Act. This case should be remanded so that such an evaluation can be made.

---

[3] The Court recognizes that the ALJ did discuss certain pieces of record evidence that supports her finding of "marked" limitations in this domain. In particular, on February 29, 2016, state agency medical consultants, Child Psychiatrist Paul Liu, D.O. and Speech and Language Pathologist Michele Bridges, M.A., provided a joint opinion regarding Plaintiff. (Tr. 236-45). As relevant to this Court's analysis of the issues in this case, they found Plaintiff had "marked" impairment in "Acquiring and Using Information." (Tr. 240). In support of that finding, they noted that Plaintiff had a receptive and language impairment, and that the receptive language deficit "interferes with her ability to comprehend grade-level curriculum, complex directions and paragraphs/stories read to her. Her expressive lang[uage] delays interferes [sic] with her ability to participate in classroom discussion." (*Id.*) However, this opinion predated many of the most detailed and relevant records discussed above, and regardless, the ALJ's obligation is to evenly discuss and weigh the salient evidence both for and against a finding of disability, which simply did not happen here. *Trudell*, 130 F. Supp. 2d at 895; *Brooks*, 531 F. App'x at 640-41.

### III. CONCLUSION

For the reasons set forth above, the Court finds that the Administrative Law Judge's conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 23**) be **DENIED**, Plaintiff's Motion for Summary Judgment (**ECF No. 19**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: March 29, 2021　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### **NOTICE**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2021.

                                              s/Eddrey Butts
                                              EDDREY BUTTS
                                              Case Manager